FILED
2013 Sep-30  PM 02:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | | |
|---|---|---|
| LADONNA MICHELLE SIQUINA, | ) | |
| | ) | |
| Claimant, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:11-CV-3269-KOB |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

The claimant, Ladonna Michelle Siquina, brings this action pursuant to the

provisions of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking

judicial review of a final adverse decision of the Commissioner of the Social Security

Administration denying her application for disability insurance benefits. The claimant

timely pursued and exhausted her administrative remedies available before the

Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the

Social Security Act, 42 U.S.C. § 405(g). Based on the court's review of the record and the

briefs submitted by the parties, the court finds that the decision of the Commissioner is

due to be affirmed.

### I. STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the

Commissioner is supported by substantial evidence and whether the proper legal

standards were applied. <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." <u>Id.</u> (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Id.</u> This court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990). Even if the court finds that the evidence preponderates against the Commissioner's decision, the court must affirm the Commissioner's decision if it is supported by substantial evidence. <u>Ellison v. Barnhart</u>, 355 F.3d 1272, 1275 (11th Cir. 2003).

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and to establish entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of establishing entitlement to disability benefits, the act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities

2

which are demonstrable by medically acceptable clinical and laboratory diagnostic

techniques."  42 U.S.C. § 423(d)(3).

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when

the person cannot "engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A). To make this determination, the Commissioner

employs a five step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments
> set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next
> question, or, on steps three and five, to a finding of disability. A negative
> answer to any question, other than step three, leads to a determination of
> "not disabled."

McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986); See 20 C.F.R. §§ 404.1520,

416.920.

In the present case, the ALJ determined the claimant met the first two tests, but

concluded she did not suffer from a listed impairment. The ALJ found the claimant had

the residual functional capacity (RFC) to perform sedentary work, with a sit/stand option.

R. 20. Specifically, the ALJ found that the claimant could occasionally lift and carry up

to ten pounds but could not lift above shoulder level; could sit for six hours out of an eight-hour workday, but not for longer than 45 minutes without standing and changing positions; stand/walk for six hours in an eight-hour workday, but not for more than 45 minutes without the ability to sit; could not work on ladders, ropes, scaffolds, or around dangerous machinery, unprotected heights, or heavy vibration; could occasionally balance, stoop, kneel, crouch, or climb ramps and stairs; should avoid exposure to heat and cold; and cannot work around any items that are sharp or anything that would cause a stabbing. R. 20. The ALJ further found that the claimant had the mental ability to concentrate for an eight-hour workday in two hour increments with regular breaks, and required infrequent and gradually introduced changes in work. R. 20. With this RFC, the ALJ found the claimant was unable to perform any past relevant work. R. 24.

Once the ALJ determined the claimant could not return to her prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do." Foote, 67 F.3d at 1559. When a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines (the grids). Foote, 67 F.3d at 1558-59. The presence of a non-exertional impairment (such as pain, fatigue or mental illness) also prevents exclusive reliance on the grids. Foote, 67 F.3d at 1559. In such cases "the [Commissioner] must seek expert vocational testimony. Id.

At the claimant's ALJ hearing, the vocational expert (VE) testified that, with the claimant's RFC, she could perform the requirements of representative occupations such as assembler, sorter, and taper. R. 57. Based upon this testimony, the ALJ found the claimant could perform other work available in the national economy. R. 24-25. Therefore, the ALJ found the claimant was not disabled at step five of the sequential evaluation framework. R. 25.

### III. DISCUSSION

The claimant was 42 years old as of the date of the ALJ's decision. R.125. She has a high school education and past relevant work as a restaurant shift manager. R. 146, 155. She alleges she became disabled on January 1, 2009, because of spondylolythesis,[1] degenerative bone disease, diabetes, hypertension, depression/anxiety, and hepatitis C. R. 145. The claimant raises three issues on appeal: (1) whether the ALJ erred by giving little weight to Dr. Raju's statements that she could not work; (2) whether the ALJ erred in finding her back impairment was not severe; and (3) whether the ALJ erred in failing to credit the claimant's testimony about subjective symptoms.

### A.

The claimant argues the ALJ erred by giving little weight to Dr. Raju's statements that she could not work. Pl.'s Br. 5. The claimant was first diagnosed with hepatitis C in

---

[1]   Spondylolisthesis is "forward displacement of one vertebra over another." Dorland's Illustrated Medical Dictionary 1567 (27th Edition).

February 2008 and referred to Dr. Raju, who is a gastroenterologist. R. 321. After obtaining lab work and a liver biopsy, Dr. Raju saw the claimant on June 3, 2008. R. 314. He noted the claimant asymptomatic, and began treatment for hepatitis C. R. 314. Dr. Raju continued to treat the claimant on an ongoing basis.

Dr. Raju wrote two letters indicating the claimant had been unable to work while undergoing treatment for her hepatitis C because of medication side effects. R. 423, 449. Dr. Raju wrote a letter on June 30, 2010, stating the claimant was "undergoing medical treatment and due to medication side effects she reports that she is unable to continue working at this time." R. 449. Dr. Raju wrote another letter on January 3, 2011, stating the claimant was being treated for a "chronic medical condition with medications that caused side effects that rendered her unable to work during 2010." R. 423.

In considering whether an ALJ has properly rejected a treating physician's opinion, this court is not without guidance. "The law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). "Good cause" exists when the evidence does not bolster the treating physician's opinion; a contrary finding is supported by the evidence; or the opinion is conclusory or inconsistent with the treating physician's own medical records. Id. If the ALJ rejects a treating physician's opinion, he ALJ must clearly articulate the reasons for

doing so. Id. ("The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error.")

The ALJ gave several reasons why he gave little weight to Dr. Raju's letters. The ALJ found the letters "were written at the request of the claimant and not based upon any objective medical data." R. 23. The ALJ observed that Dr. Raju appeared to have "relied quite heavily on the subjective report of symptoms and limitations provided by the claimant and seemed to uncritically accept most of it as true." R. 23. He also found Dr. Raju's letters were "inconsistent with his own treatment records." R. 23.

The ALJ correctly found Dr. Raju's letters contained no supporting medical data for his conclusory statements that the claimant was unable to work. Dr. Raju did not identify the medications or specific side effects that they caused. R. 423, 449. Nor did he state why they prevented the claimant from working. R. 423, 449. The regulations provide that the more supporting evidence a physician provides for an opinion, the more weight it will be given. See 20 C.F.R. § 404.1527(d)(3). Because Dr. Raju's opinions were conclusory and had no supporting evidence, the ALJ had good cause for giving them little weight.

Substantial evidence also supports the ALJ's finding that Dr. Raju's treatment notes are not consistent with his statements of disability. For example, at the claimant's initial visit, Dr. Raju completed a checklist that showed normal findings in all areas. R. 323. Dr. Raju completed that same checklist in March 2009, June 2009, December 2009,

June 2010, September 2010, and December 2010, and made identical findings each time; that is, he marked normal findings in all areas. R. 285, 295, 389, 433, 446, 475. Additionally, his treatment records show only minor complaints from the claimant, which are not consistent with his statement that she could not work.

For example, the claimant did not begin treatment for her hepatitis until January 2009, and reported no side effects from treatment until June 2009, when she first reported feeling tired all of the time. R. 284. In December 2009 her only complaints were that she felt weak, dizzy and nervous after having injections. R. 388. In June 2010 she complained of feeling tired and anxious, but the examination note indicates there was no anxiety or depression. R. 432-33. In September 2010, the claimant reported having low energy, and that she had stopped her hepatitis C medications in July 2010. R. 445. In December 2010, the claimant reported feeling tired and reported anxiety attacks, but the examination note indicates no anxiety or depression. 432-33. The treatment notes do not indicate the claimant's side effects from medications were severe or at a disabling level. The treatment notes also show the claimant stopped taking medications for hepatitis C in July 2010, which is inconsistent with Dr. Raju's statement in June 2011 that "medications that caused side effects . . . rendered her unable to work during 2010." R. 423.

The evidence supports the ALJ's conclusion that Dr. Raju's letters were written at the request of the claimant and relied heavily on the claimant's subjective reports of

symptoms. On December 27, 2010, the claimant faxed a letter to Dr. Raju's office asking for a letter that stated that she had a "chronic medical condition" and had not been able to work during 2010. R. 431. The language is nearly identical to the language contained in Dr. Raju's January 11, 2011, letter and suggests Dr. Raju in fact relied upon the claimant's subjective reports of side effects from her medications. Dr. Raju's letter of June 30, 2010, states the claimant "reports that she is unable to continue working at this time" because of medication side effects. R. 449 (emphasis added). Therefore, it was reasonable in the present case for the ALJ to give little weight to Dr. Raju's letters in part because the claimant had specifically requested such letters.

In considering Dr. Raju's statements, the ALJ also noted they were not medical opinions, but rather a statement of disability. R. 23- 24. The regulations provide that statements that a claimant is disabled or unable to work are not medical opinions, but are opinions on issues reserved to the Commissioner. See 20 C.F.R. § 404.1527(e)(2010). Pursuant to the regulations, an ALJ has no duty to give such statements any special deference. See 20 C.F.R. § 404.1527(e)(3)(2010).

The ALJ had good cause for giving Dr. Raju's opinions little weight. Dr. Raju's opinions were conclusory, not bolstered by the evidence, and inconsistent with his own treatment notes. Therefore, the ALJ applied the proper legal standards, and his decision to give Dr. Raju's opinions little weight is reasonable and supported by substantial evidence.

**B.**

The claimant next argues the ALJ erred in finding her back impairment was not severe. Pl.'s Br. 8. A severe impairment is one that "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 1520(c). The ALJ went into great detail in explaining why he found the claimant's back impairment was not severe. He noted treatment records "indicate the claimant's gait was normal." R. 22. He also observed the claimant "testified at the hearing she takes no pain medication and there is a gap in the treatment from 2005 to 2008." R. 22  He noted the majority of the claimant's complaints had been for hepatitis, not lower back pain. R. 22. The ALJ observed the claimant's daily activities included driving,  performing household chores, and cooking. R. 22. He concluded the "lack of medication and regular treatment combined with the claimant's activities of daily living suggest this condition does not impose significant functional limitations." R. 22. Therefore, he found the claimant's back impairment was not severe. R. 22.

The evidence supports the ALJ's finding. Dr. Raju's treatment notes show that on each of the claimant's numerous visits, she was noted to have a normal gait, with no muscle weakness or atrophy. The medical records also show the claimant rarely if ever complained of back pain at her numerous visits to treating doctors. Therefore, substantial evidence supports the ALJ's finding that the claimant's back impairment was not a severe impairment because it did not impose significant functional limitations.

## C.

The claimant's final argument is that the ALJ erred in failing to credit the claimant's testimony about subjective symptoms. Pl.'s Br. 8. In this circuit, the ALJ applies "a three part 'pain standard' when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, 67 F.3d at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Id. (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)) (emphasis added). If an ALJ discredits a claimant's subjective complaints, he must give "explicit and adequate reasons" for his decision. See id. at 1561-62. "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." Id. at 1562. The ALJ's credibility determination need not cite "particular phrases or formulations" as long as it enables the court to conclude that the ALJ considered the claimant's medical condition as a whole. See Dyer v. Barnhart, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (citing Foote, 67 F.3d at 1561).

In the present case, the ALJ found the claimant's medically determinable impairments could reasonably be expected to cause her alleged symptoms. R. 21.

However, he found her statements about the severity of her symptoms were not credible. R. 22.

The ALJ noted the claimant testified that her hepatitis C caused her to behave aggressively and nervously with chattering teeth and physical jerking. R. 22, 45-46. However, the medical records only document consistent complaints of fatigue. R. 284, 388, 432, 445, 475. While she told Dr. Raju that she felt nervous after having her injections, she did not report this side effect consistently, and never mentioned chattering teeth or physical jerking. R. 388, 474.

The ALJ also noted inconsistencies in the claimant's testimony. He observed the claimant testified she was told that her next option was to have a liver transplant. R. 22. However, the ALJ noted that ultrasound testing in July 2010 had showed no gross cirrhotic change. R. 22, 416. The ALJ noted that although the claimant testified she had "chronic fatigue due to hepatitis and never felt good," she admitted she "takes her daughter to school, does housework, cooks and goes to the store once a week." R. 22. The ALJ concluded the claimant would not be able to perform those activities on a daily basis if her fatigue were as severe as she alleged. R. 22. He also found the claimant's testimony that she could "stand thirty to forty-five minutes, walk about the same time and sit about the same time" was inconsistent with her allegations of disabling fatigue. R. 22. These inconsistencies in the claimant's statements provide substantial evidence to support the ALJ's refusal to credit her allegations of disabling fatigue.

The ALJ also considered the claimant's allegation that her depression and anxiety were disabling. R. 23. He observed that although the record shows the claimant complained of depression and anxiety on occasion, she testified she had not been referred to a mental health specialist for these condition. R. 23, 54. The ALJ also noted the record shows the claimant was never treated by a psychologist or psychiatrist for her alleged mental symptoms. R. 23. The medical record shows Dr. Raju indicated the claimant had no anxiety or depression on each of his examination notes. R. 285, 295, 389, 433, 446, 475. Therefore, substantial evidence supports the ALJ's finding that claimant's anxiety and depression did not cause symptoms incompatible with his RFC finding.

Even though the ALJ found the claimant's allegations of disabling symptoms were not credible, he limited her to a range of work that is consistent with her testimony concerning her ability to sit, stand and walk. The ALJ limited the claimant to sitting, standing or walking for no more than 45 minutes at one time. R. 20. He also accommodated the claimant's testimony that her condition can be transmitted to other through her blood by including a limitation that she could not work around sharp objects or anything that could cause a stabbing. R. 20, 42.

Therefore, the court finds substantial evidence supports the ALJ credibility findings. He properly consider the claimant's testimony in accordance with the proper legal standards, and his findings are reasonable. Therefore, claimant's argument is without merit.

13

## IV. CONCLUSION

The court concludes the ALJ's determination that the claimant is not disabled is supported by substantial evidence, and that the ALJ applied the proper legal standards in arriving at this decision. Accordingly, the Commissioner's final decision is due to be affirmed. The court will enter an appropriate order.

DONE and ORDERED this 30th day of September, 2013.


KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE

14